IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02849-RM-KLM

AHMAD MOHAMMAD AJAJ,

     Plaintiff,

v.

UNITED STATES OF AMERICA,
FEDERAL BUREAU OF PRISONS,
DERRICK JONES,
MICHAEL CUNDIFF,
TAMMY RUDA-SORRENTI,
IZZETTI, FNU,
CHARLES ALVAREZ,
SEAN SNIDER,
D. SHEPARD,
C. OLGUIN, and
D. OBA,

     Defendants.

_____

**RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on the following motions: **Defendant United States of America's Partial Motion for Summary Judgment on Certain FTCA Claims** [#132][1] ("Partial Motion for Summary Judgment"); **Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint** [#133] ("Motion to Dismiss") (collectively "Motions"); and **Plaintiff's Motion for a Judicial Notice Relevant to His Argument that His Halal Diet**

_____

[1] "[#132]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

-1-

**Injunctive Relief Claim Against Defendant Bureau of Prisons is not Moot** [#159] ("Motion for Judicial Notice"). Pursuant to 28 U.S.C. § 636(b) and D.C.COLO.L.CivR 72.1(c), the Motions have been referred to the undersigned for a recommendation regarding disposition. [#134, #160]. The Court has reviewed the Motions [#132, #133, #159], the Responses [#144, #162], the Replies [#151, #154], the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court recommends that the Motion to Dismiss [#133] and Partial Motion for Summary Judgment [#132] be **GRANTED IN PART AND DENIED IN PART**. The Motion for Judicial Notice is **DENIED**.

## I. Background

Plaintiff is a pro se[2] prisoner in the custody of the Bureau of Prisons ("BOP"). In an Order [#125] of January 29, 2019, District Judge Raymond P. Moore noted that the Verified Second Amended Complaint [#82] ("Second Amended Complaint") alleges various claims, invoking multiple legal theories: *Bivens*, Federal Tort Claims Act ("FTCA"), Administrative Procedures Act ("APA"), *Accardi* doctrine, Rehabilitation Act, Religious Freedom Restoration Act ("RFRA"), the Alien Tort Claims Act, the Federal Tort Claims Act ("FTCA") and various federal statutes. *Id.* at 3. The Order [#125] further stated that, factually, Plaintiff alleges, among other things, deprivation of a medical and religious diet; exposure

---

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (*citing Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

to pepper spray gas; deprivation of fresh air, sunlight, outside recreation and recreational association with other inmates; failure to accommodate religiously mandated visits with family members via video conferencing; termination of a medical prescription; and refusal to accommodate Plaintiff's medical conditions. *Id.*

On September 19, 2018, United States Magistrate Judge Gordon P. Gallagher issued a Recommendation [#120] that certain claims be dismissed. By Order [#125] of January 29, 2019, Judge Moore affirmed and adopted in part and rejected in part the Recommendation [#120]. The Order [#125] dismissed with prejudice Claims One, Two, Three, Four, and Five as legally frivolous to the extent they were alleged under the Alien Tort Claims Act. *Id.* at 11. It also dismissed with prejudice in part Claims Four and Six. *Id.* The Order [#125] found that the following claims could proceed:

> Claim one as alleged in violation of the Eighth Amendment, Equal Protection clause, RFRA, and First Amendment Establishment clause against Defendants Jones, Sorrenti, Cundiff, Izzetti, and BOP, and under the FTCA with regard to the United States;

> Claim two as alleged in violation of the Eighth Amendment and Equal Protection clause against Defendants Alvarez and Snyder, and under the FTCA with regard to the United States;

> Claim three as alleged against Defendant Shepard for alleged violations of RFRA, the First Amendment, Eighth Amendment, and Equal Protection Clause;

> Claim four as alleged under the RFRA, First Amendment, and Equal Protection Clause against the BOP;

> Claim five as alleged in violation of the First and Eighth Amendments and Equal Protection and Due Process clauses against Defendants Obu and Olguin, and under the FTCA with regard to the United States; and

> Claim six as alleged under the FTCA against the United States.

*Id.* at 11-12.

There are thus six remaining numbered claims, each asserting multiple arguments. The Motion to Dismiss [#133] has broken down the arguments in each claim by subparts, *i.e.,* A, B, C, for ease of reference, and has made a chart listing each subpart. *Id.* at 3-5. The Court adopts Defendants' characterization of the claims with one exception. Defendants characterized Claim One as including in part a claim against the BOP for the alleged failure to provide Plaintiff with a religious diet (Claim One F), but not a medical diet. *Mot. Dismiss* [#133] at 3. The alleged failure to provide a medical diet was referenced only as an FTCA claim against the United States (Claim One D). *Id.* Plaintiff contends that the Second Amended Complaint does contain such a claim against the BOP. *See Reply to Defs.' Resp. to Pl.'s Mot. for Leave to Supplement Compl.* [#166], at 3. The Court agrees with Plaintiff. Claim One, which is asserted against the BOP as well as other Defendants, alleges a failure to provide both a religious diet and a medical diet. *Second Am. Compl.* [#82]. Neither the Motion to Dismiss [#133] nor the Partial Motion for Summary Judgment [#132] address the BOP's alleged failure to provide a medical diet. Thus, the viability of the claim is not technically before the Court at this juncture. Nonetheless, the Court addresses the medical diet claim against the BOP in part in connection with its analysis of Plaintiff's equal protection claims. *See Section* III.D.1, *infra.*

Turning back to the pending motions, the Partial Motion for Summary Judgment [#132] asserts that four of Plaintiff's FTCA claims against the United States should be dismissed because Plaintiff did not file those claims within six months of the BOP's denials of Plaintiff's underlying tort claims. The Motion to Dismiss [#133] asserts that dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6) because: (1) Defendant Olguin is entitled to absolute immunity in connection with Claim Five; (2) Claim

Four seeking injunctive relief is moot or is in an improper venue; (3) Claim One F related to the failure to provide Plaintiff with a religious diet is barred by claim preclusion; (4) there is no *Bivens* remedy for Plaintiff's constitutional claims against the individual Defendants; (5) Plaintiff fails to plausibly plead many of his claims; (6) Plaintiff did not file a certificate of review for his FTCA claims that could be construed as medical-malpractice claims; and (7) and there is no private analogue for Plaintiff's tort claims under the FTCA. The Court construes Plaintiff's Motion for Judicial Notice [#159] as responding to Defendants' argument that Claim One F is barred by claim preclusion, and is addressed in that section of the Analysis, Section III.C, *infra*.

## II. Standards of Review

### A. Motion for Summary Judgment

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at

trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

## B.    Motion to Dismiss

### 1.    Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) attacks a court's subject matter jurisdiction. The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Eng'rs,* 841 F.2d 1011, 1012 (10th Cir.1987). The objection that a federal court lacks subject matter jurisdiction pursuant to Rule 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).

If at any time, the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 506.

A 12(b)(1) motion may take two forms: a facial attack or factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings. *Id.* at 1003. In that instance, "the court does not presume the truthfulness of the complaint's factual allegations, but has broad discretion to allow affidavits [and] other documents. . . ." *Id.* The consideration of such evidence does not convert the motion to a Rule 56 motion. *Id.*

### 2. Rule 12(b)(3)

The standard of review under Rule 12(b)(3) is generally the same as a motion to dismiss for lack of personal jurisdiction. *Rudder v. Herriman,* No. 15-cv-01142-CBS, 2015 WL 7075403, at *1 (D. Colo. Nov. 13, 2015). "When a motion to dismiss for lack of jurisdiction is brought before trial and supported by affidavits and other written material, a plaintiff need only make a prima facie showing." *Id.* In assessing whether the plaintiff has met its burden, allegations in the complaint that are uncontroverted by the defendant's affidavits must be taken as true and all factual disputes should be resolved in favor of the plaintiff. *Id.* A plaintiff's choice of forum is generally given great deference.

### 3. Rule 12(b)(6)

Finally, Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337,

340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk,*

*LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

### III.  Analysis

The Court notes at the outset that the majority of claims are analyzed in connection with the Motion to Dismiss [#133].  The Motion to Dismiss [#133] first addresses procedural arguments as to why certain claims are subject to dismissal, and then proceeds to the merits of the claims by subject matter.  The Court addresses the arguments in the order in which the Motion to Dismiss [#133] discusses them.

The Partial Motion for Summary Judgment [#132] addresses four of the FTCA claims asserted against the United States; specifically, Claims One G, Two C, Six A, and Six C.  The United States argues that these claim are barred as untimely.  The Partial Motion for Summary Judgment [#132] is addressed in Section III.F.2, *infra*.

### A.    Absolute Immunity as to Defendant Olguin

Claim Five (and its five subparts, Claims 5A through 5E) allege generally that Defendants Olguin and Oba deprived Plaintiff of prescribed medications in violation of various laws.  *Second Am. Compl.* [#82], at 25-26.  The Motion to Dismiss [#133] asserts that Defendant Olguin is entitled to absolute immunity as to this claim.  *Id.* at 6.  The Court agrees in part.

The Federally Supported Health Care Assistance Act, 42 U.S.C. § 233(a), "grants absolute immunity to PHS [Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment

by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). Section 233(a) limits recovery to suits against the United States under the FTCA. *Id.*

Defendant Olguin provided evidence that, during all times at issue, she was a commissioned PHS officer detailed as a medical provider for the Bureau at FCC Florence. *Olguin Decl.* [#133-1], ¶¶ 1-2. Olguin further asserts that all of her actions "with regard to Plaintiff were done in the performance of a medical or related function within the scope of [her] employment as a commissioned officer with the PHS." *Id.* at ¶ 2. This Declaration is properly considered under Rule 12(b)(1). *Holt*, 46 F.3d at 1003.

The Court finds from a review of Claim Five that many, but not all, of the allegations against Olguin arise from her performance of medical or related functions within the scope of her employment. *Second Am. Compl.* [#82], at 25-26. The allegations related to the performance of medical or related functions include that Olguin deprived Plaintiff of his medication in order to cause Plaintiff pain and suffering; fabricated a disciplinary incident report against Plaintiff falsely accusing him of the use of unauthorized medication in order to deprive him of his medication; fabricated medical records, including marking Plaintiff as having refused his medication when he did not; fabricated (and used staff members to help fabricate) official records and false memorandums against Plaintiff to help Olguin cover up the deprivation of Plaintiff's medication; and deleted information from Plaintiff's medical records. *See id.* ¶¶ 158, 163-165. While Plaintiff contests Olguin's Declaration stating that these acts arose within the scope of her employment [#133-1, ¶ 2], he has provided no evidence to contest this portion of the Declaration. Accordingly, the Court finds that Defendant Olguin is entitled to absolute immunity in connection with the above referenced

allegations in Claim Five. *Hui*, 559 U.S. at 806; *see also May v. Segovia*, No. 15-cv-00405-NYW, 2017 WL 57257, at *4 (D. Colo. Jan. 3, 2017). It is therefore recommended that these allegations be **dismissed without prejudice** pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *See May*, 2017 WL 57257, at 4.

Plaintiff's Response [#144] asserts, however, that Defendant Olguin's alleged conduct in Claim Five goes beyond performing medical and related functions. *Id.* at 27.[3] Thus, Plaintiff alleges that the fabrication of a disciplinary incident report was done not only to deprive Plaintiff of his medication (for which Olguin is absolutely immune) but also to retaliate against Plaintiff for his previous verbal and written complaints against Olguin. *Second Am. Compl.* [#82], at 25, ¶ 158. Plaintiff also alleges that Olguin used other staff members to fabricate false memorandums against Plaintiff to cover up her racist and retaliatory actions against him. *Id.* at 26, ¶ 164. The Court agrees with Plaintiff that these allegations do not appear to implicate the performance of medical or related functions. It is therefore recommended that the Motion to Dismiss [#133] be **denied** as to this portion of Claim Five against Olguin based on absolute immunity.[4]

In conclusion, it is recommended that the Court **grant in part and deny in part** the Motion to Dismiss [#133] on the basis of absolute immunity. Specifically, it is recommended that the Motion to Dismiss [#133] be **granted** as to allegations regarding

---

[3] The Court treats Plaintiff's Verified Second Amended Complaint [#82] as an affidavit on this issue. *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002). The Declaration's statement that all of Olguin's "actions with regard to Plaintiff were done in the performance of a medical or related function. . . ." ([#133-1], ¶ 2) cannot defeat the allegations to the contrary in the verified complaint.

[4] The Court addresses the remaining allegations as to Olguin in Section III,D, *infra*, in connection with whether Plaintiff has a *Bivens* remedy as to the individual Defendants.

action arising from Olguin's performance of medical or related functions within the scope of her employment, and otherwise **denied**. As to the portion of Claim Five that alleges actions that arise from Olguin's performance of medical or related functions within the scope of her employment, it is recommended that this claim be **dismissed without prejudice** under Rule 12(b)(1) for lack of subject matter jurisdiction.

### B. Mootness or Improper Venue as to Claim Four

Defendants next assert that Claim Four should be dismissed as moot under Rule 12(b)(1) to the extent it seeks relief at Plaintiff's prior facility, or under Rule 12(b)(3) for improper venue to the extent it is broadly construed to seek relief at Plaintiff's current facility. *Mot. Dismiss* [#133], at 6-9. Claim Four seeks injunctive relief against the BOP for failing to accommodate Plaintiff's requests for video conferencing with family members. *Second Am. Compl.* [#82], at 21-24. Plaintiff alleges, for example, that "Defendant BOP repeatedly refused to accommodate Plaintiff's religiously mandated visits with his mother and family through the use of video conferencing which is the only readily available means for him to visit with his mother and family." *Id.* at 21, ¶ 125. Plaintiff's mother and family "live in Jerusalem" and Plaintiff alleges that they "lack[] the means and the ability to travel to the United States and visit with" Plaintiff. *Id.* ¶ 126.

Plaintiff asserts that Claim Four is not mooted by his transfer to another facility because he is challenging a system-wide policy. He remains incarcerated in the BOP subject to the same visitation policies that prohibit video conference visits except for deaf prisoners, and a judgment in his favor may require BOP to modify its policies. *Resp.* [#144] at 2. Plaintiff notes that Claim Four is not asserted against ADX or its staff but against the

BOP, that the claim only cites BOP's national policies and regulations, and that the claim relates to BOP's conduct over the last 25 years with respect to not accommodating video conference visits. *Id.* at 3. According to Plaintiff, BOP's policies that do not allow video conference visits with his family will affect him and continue to affect him no matter where the BOP houses him. *Id.*

Turning to the Court's analysis, the Tenth Circuit has held that "[w]hen a prisoner files suit against prison officials who work in the institution in which he is incarcerated, seeking declaratory and injunctive relief on the basis of alleged wrongful conduct by those officials, and then that prisoner is subsequently transferred to another prison or released from the prison system, courts are presented with a question of possible mootness." *Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011). In that situation, "courts have concluded that they are unable to provide the prisoner with effective relief," and have dismissed the claims as moot. *Id.* In a moot case a plaintiff no longer suffers a redressible injury. *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019).

However, when the lawsuit challenges policies that apply in a generally uniform fashion throughout a prison system, "courts have been disinclined to conclude that the prisoner's declaratory or injunctive claims are moot, even after he has been transferred to another prison in that system." *Jordan*, 654 F.3d at 1027 (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311-12 (10th Cir. 2010)). The "crucial question" in deciding whether the case is moot "is whether granting the relief will have some effect in the real world." *Id.* If the court cannot grant effective relief, there is no live controversy and the case becomes moot. *Id.*

The Court finds in this case that Plaintiff's claims are not moot under the rationale of *Jordan* because Plaintiff is suing the BOP, not officials at ADX or elsewhere, for challenges to its policies that he alleges apply in a generally uniform fashion throughout the prison system. Thus, Plaintiff alleges, *inter alia*, that "all BOP prisons have video-conference system [sic] and access to the internet," that the BOP "allows deaf persons to communicate by a videophone or video-conference system with their attorneys, family and friends while in the custody of the BOP," the Pentagon is allowing Guantanamo detainees and detainees at U.S. Bagram Air Base Detention Facility to Skype video conversations with their families, and that the BOP "has failed to explain or give any reason" why the BOP is refusing to extend the same practice to Plaintiff "for his religiously mandated visits with his family." *Second Am. Compl.* [#82], at 22-23, ¶¶ 139-143. Plaintiff asserts that "[t]he BOP's refusal to accommodate Plaintiff's religiously mandated visits with his mother and family" violates RFRA and the First Amendment. *Id.* at 24, ¶¶ 154-156. While Defendants argue to the contrary (*see Reply* [#194], at 3), the Court finds that Plaintiff's allegations can reasonably be construed to assert that BOP's national policies regarding video conferencing restrict his access to his mother and family.

Defendants' argument that this claim should be dismissed based on improper venue is also rejected. *See Mot. Dismiss* [#133], at 8-9. Defendants assert that, to the extent the Court construes Claim Four as seeking injunctive relief for actions occurring at USP Allenwood in Pennsylvania, none of the grounds to establish venue under 28 U.S.C. § 1391(e) are present. *Id.* at 8. The Court has not, however, construed Claim Four in that narrow manner, as he challenges policies that apply in a generally uniform fashion throughout the prison system. Moreover, the fact that Plaintiff was transferred out of

Colorado does not impact the issue of venue. Plaintiff was in Colorado when he filed suit, and a substantial portion of the events are alleged to have occurred here. Accordingly, venue was proper pursuant to 28 U.S.C. § 1391(e)(1)(B) when suit was brought. A subsequent change of residence by Plaintiff does not require a change in venue. *Wilson v. Comm'r of Social Security*, No. CIV-18-075-RAW-KEW, 2019 WL 2488725, at *2 (E.D. Okla. Feb. 19, 2019); *see also Horihan v. Hartford Ins. Co. of the Midwest*, 979 F. Supp. 1073, 1076 (E.D. Tex. 1997) ("The district in which proper venue lies 'is determined at the time the complaint is filed. . . .'") (citation omitted).

Based on the foregoing, it is recommended that the Motion to Dismiss [#133] be **denied** to the extent Defendants assert that Claim Four should be dismissed as moot or on the basis of improper venue.

## C.    Claim Preclusion

Claim One F asserts that the BOP has interfered with Plaintiff's religious halal diet in violation of RFRA. *Second Am. Compl.* [#82], at 16-17. Defendants assert that Plaintiff has already achieved a judgment on the merits on the same cause of action against the same party (the BOP), and that he is precluded from relitigating that claim. *Mot. Dismiss* [#133], at 9-10. Thus, in *Ajaj v. Federal Bureau of Prisons*, No. 15-cv-992- RBJ-KLM ("*Ajaj I*"), Plaintiff brought a RFRA claim against the BOP based on, among other things, "failure to honor [Plaintiff's] requirement of a halal diet." 2018 WL 4356787, at *1 (D. Colo. Sept. 13, 2018). This claim was litigated through trial. *Id.* at *5. On September 6, 2018, the Court in *Ajaj I* issued an Order of Judgment that "enjoin[ed] the BOP from discontinuing Mr. Ajaj's certified halal diet unless that is required to serve a compelling governmental

interest and no reasonable alternative exists." *Id.* The Court further "require[d] that the solution continue past the end of this lawsuit." *Id.* Final Judgment [#292] in *Ajaj I* was issued on September 14, 2018.

Under the doctrine of res judicata or claim preclusion, "'a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action.'" *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008) (citation omitted). "'[C]laim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.'" *Id.* (quoting *MACTEC Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)). If these issues are met, claim preclusion is appropriate "unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit. *MACTEC, Inc.*, 427 F.3d at 831.

Here, the only dispute relates to the third element, and more specifically, whether the issues raised in Claim One F were or could have been litigated in the *Ajaj I* proceeding. *See Spence v. Latting*, 512 F.2d 93, 98 (10th Cir. 1975) ("Where a second suit between the same parties . . . is on the same [transaction], the final judgment in the prior action is conclusive as to all matters which were actually litigated as well as those which could have been litigated."). Plaintiff does not dispute that he already litigated a RFRA claim against the BOP in *Ajaj I* based on the failure to honor Plaintiff's requirement of a halal diet, which resulted in the judgment and injunction described previously. To the extent that Plaintiff alleges that Defendants failed to provide him a religious diet before the Final Judgment and injunction in *Ajaj I* in September 2018, the Court finds that this portion of Claim One F is barred under the doctrine of claim preclusion.

Plaintiff also asserts additional allegations related to Defendants' failure to provide a religious diet that may not have been litigated in *Ajaj I* but that occurred prior to the Final Judgment and injunction, including the fact that Plaintiff was not provided with food items required for the EIDs feasts or Ramadan. *See, e.g., Second Am. Compl.* [#82], ¶ 45 (Plaintiff was not provided food for the EIDs feasts "since 2002"). The Court finds that these events are also barred under claim preclusion because they arose from the same transaction (the failure to provide a religious diet) and thus could have been litigated in *Ajaj I. See Watson v. Mylan Pharm.*, No. 19-3162, 2019 WL 6893705, at *3 (10th Cir. Dec. 18, 2019) ("Under the transactional approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation.'") (citation omitted).

Plaintiff asserts, however, that "[c]laim preclusion does not apply because plaintiff is no longer being served a halal diet that compl[ies] with his sincerely held religious dietary laws". Plaintiff maintains that "[a]fter October 2018," when the injunction was entered in *Ajaj I*, Plaintiff has been served food that does not comply with his medical diet and food from vendors who misbrand their food as halal." *Resp.* [#144], at 7-8; *see also Mot. for Judicial Notice* [#159] at 1. Thus, Plaintiff argues that claim preclusion does not apply because the circumstances have changed since *Ajaj I* and its injunction.

Before addressing the merits of Plaintiff's argument, the Court addresses the Motion for Judicial Notice [#159] that is relevant to this issue. Plaintiff asks in the Motion for Judicial Notice [#159] that the Court take judicial notice of certain documents that he

contends support his argument that this claim is not moot.[5]  While the Court has considered the arguments in the Motion for Judicial Notice [#159], the Court declines to take judicial notice of the attached documents as they are not necessary to, and would not impact, the Court's ruling on the Motion to Dismiss [#133].  Accordingly, the Motion for Judicial Notice [#159] is **denied**.

Turning back to Plaintiff's argument that claim preclusion does not apply regarding events that occurred after October 2018, Defendants assert that Plaintiff did not plead those facts in the Second Amended Complaint [#82], nor could he since that Complaint was filed in 2017.  Thus, they assert that Plaintiff's assertions in his Response [#144] are not relevant to whether Claim One F as pleaded is claim-precluded.  Since the filing of the Motion to Dismiss the Court has, however, granted Plaintiff leave to supplement the complaint.  *See Order* of February 10, 2020 [#167].  In the Verified Supplemental Complaint [#168], Plaintiff has alleged continuing violations related to his religious diet, including allegations of alleged halal misbranding.  Accordingly, Defendants' argument that these facts were not plead and are thus irrelevant is no longer applicable.

Defendants also argue that Plaintiff's allegations that he has not been served a halal diet post-injunction, including the allegations of misbranding, were in fact litigated in *Ajaj I* as they were the subject of a Motion for Order to Show Cause Why Defendant BOP Should  Not Be Held in Contempt [#317] ("Contempt Motion") filed by Plaintiff.  The Court rejects this argument. The Contempt Motion [#317] in *Ajaj I* did not raise the issue of misbranding of halal food, nor did it assert that Plaintiff was being provided non-halal meals

---

[5] As Defendants have not argued that this claim is moot, the Court construes the Motion for Judicial Notice [#159] as addressing Defendants' claim preclusion argument.

or meals that did not comply with his religious diet. Instead, the Contempt Motion [#319] asserted only that the BOP violated the injunction because it was "no longer providing [Plaintiff] the halal-certified diet *provided to him at the time of trial*." *Contempt Motion* [#317], at 10-13 (emphasis added).[6] The Contempt Motion [#319] further asserted that "the Court ordered Defendant BOP to continue providing Mr. Ajaj the diet he was provided at trial until and unless Defendant BOP implements a nationwide halal menu. . . ." *Id*. The *Ajaj I* Court denied the Contempt Motion [#317], finding that "the Court's intent was not to require the BOP to provide precisely the same foods, nor was it to require the BOP to provide whatever food items Mr. Ajaj prefers. The Court's intent was to require that the BOP provide a certified halal diet for Mr. Ajaj." *April 15, 2019 Order on Post-Trial Motions* [#330], at 3. The *Ajaj I* Court found "no basis . . . to find that the BOP is not complying with this Court's Order" in regard to "halal-certified meals for Mr. Ajaj." *Id*.

The Court thus finds that the allegations in Claim One F as to facts or events that have occurred since the final judgment and injunction in *Ajaj I* were not litigated in *Ajaj I*. Moreover, the Court finds that the circumstances have changed since the judgment and injunction in *Ajaj I* and the contempt proceeding. Thus, Plaintiff asserts he was told in March 2019 that a nationwide halal menu was going to be implemented in April 2019 by the BOP, and that Plaintiff could start the new diet early. *Verified Supplemental Compl.* [#268], ¶ 29. Plaintiff alleges that all the pre-packaged foods in the menu are "haram (Religious Prohibited), and are being made by a company that was indicted and convicted

---

[6] This was a specific diet that provided "prepackaged meals from both J&M Shelf Stable Meals and Saffron Road," "prepackaged, halal-certified meals containing meat on all but one day each week," and "the ability for Mr. Ajaj to make substitutions with Food Services for the items on the menu he cannot eat because of his medical conditions[.] *Id*. at 13 (internal footnote omitted).

of labeling their foods halal when they are not." *Id.* ¶¶ 31-32. Plaintiff also avers that he and his attorneys told the BOP years ago that any product by this company was not halal, and that they were assured by the BOP that this company and its certifier would not be selected to provide the halal meals. *Id.* ¶¶ 35-36. Plaintiff could not have plead these allegations in *Ajaj I* as they occurred after the Final Judgment and injunction. Moreover, this portion of Plaintiff's claim does nothing to "undercut[] the finality" of the judgment in *Ajaj I*, "which claim preclusion seeks to ensure." *See Juarez-Galvan v. United Parcel Serv.*, No. 13-4046-SAC, 2014 WL 61467, at * (D. Kan. Jan. 8, 2014).

Accordingly, the Court finds based on the change in circumstances since *Ajaj I* that Plaintiff should be allowed to present these claims. Plaintiff alleges facts and events that occurred after the Final Judgment and injunction in *Ajaj I*, and courts generally allow a plaintiff to plead such subsequent events in a later action. *See Lenox Maclaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1224 (10th Cir. 2017) ("broadly speaking, claim preclusion does not bar subsequent litigation of new claims based on facts the plaintiff did not know and could not know when it filed its complaint. . . ."); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914 (10th Cir. 1993) ("If the plaintiff is unaware of facts when filing a complaint, *res judicata* will not bar subsequent litigation."); *United Bhd. of Carpenters and Joiners of Am. v. Brown*, 343 F.2d 872, 885 (10th Cir. 1965) (noting that res judicata may not be applicable where there are "changed circumstances" or due to "equitable considerations"); *see also Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006) ("The filing of the plaintiff's complaint frames the scope of litigation, establishing a transactional nexus into which facts and claims are fitted or excluded for purposes of claim preclusion. 'New' claims, arising after the complaint has been filed, but before judgment,

may be excluded from this transactional nexus, and thus be litigated in a subsequent action.)

As the Court finds that the new events based on the nationwide halal diet and alleged misbranding of halal foods should be permitted to proceed and are not barred by claim preclusion, the Court also recommends that the claim preclusion argument in the Motion to Dismiss [#133] be denied as to Plaintiff's other allegations of events post-judgment that impact his religious diet. These include allegations that Plaintiff is not allowed to purchase halal foods with his own money, and that he is still not being served the religiously required halal food items for the Eids feasts and Ramadan.

Based on the foregoing, it is recommended that the Motion to Dismiss [#133] be **granted in part and denied in part** as to the argument that Claim One F (a RFRA claim against the BOP for failure to provide a religious diet) is barred under the doctrine of claim preclusion. Specifically, it is recommended that the Motion to Dismiss [#133] be **granted** as to events or conduct regarding the failure to provide Plaintiff a religious diet that occurred prior to the Final Judgment and injunction entered in September 2019 in *Ajaj I*, and that this portion of Claim One F be **dismissed with prejudice**. It is recommended that the Motion to Dismiss [#133] be **denied** as to events or conduct that occurred after the Final Judgment and injunction in *Ajaj I*.

## D.     The Claims Against the Individual Defendants

Defendants argue that the constitutional claims against the individual Defendants should be dismissed due to the lack of a *Bivens* remedy. *Motion* [#133], at 10-15. This argument is only applicable, however, as to claims against Defendants in their individual

capacities. *See Smith v. United States*, 561 F.3d 1090, 1093, 1099 (10th Cir. 2009) ("*Bivens* claims cannot be asserted directly against either the United States or federal officials in their official capacities or against federal agencies"; a *Bivens* claim "can only be brought against federal officials in their individual capacity.") Plaintiff has sued Defendants in both their individual and official capacities. Defendants do not address the official capacity claims. As the official capacity claims impact the Court's subject matter jurisdiction, the Court addresses these claims *sua sponte* before proceeding to the *Bivens* argument. *See* Fed. R. Civ. P. 12(h)(3).

### 1.    Official Capacity Claims

The Court first notes that Judge Lewis T. Babcock previously ruled in this case that "[t]o the extent Plaintiff seeks damages against the United States under *Bivens*, or against the individual Defendants in their official capacities, his claims are barred by the doctrine of sovereign immunity." *Order to Dismiss in Part and to Draw Case* [#20], at 9 (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 485-86 (1994); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002)). Consistent with this, Plaintiff has not asserted a claim for damages against the individual Defendants in their official capacities, only in their individual capacities. *Fourth Am. Compl.* [#82], at 3.

Plaintiff does sue Defendants, however, "for injunctive and declaratory judgment in their official capacities." *Id.* An official capacity claim for injunctive relief seeking prospective relief is not barred by the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989). The applicability of the Eleventh Amendment to an official capacity claim for declaratory relief turns on whether Plaintiff is seeking retroactive or prospective relief. *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1483

(10th Cir. 1995). While prospective claims for declaratory relief are proper, claims that seek retroactive declaratory relief are barred by the Eleventh Amendment. *Id.*

Here, to the extent Plaintiff is seeking declaratory relief as to the individual Defendants, it is retrospective in nature as he asks for a declaration that Defendants at his prior facility violated his constitutional rights. *See Fourth Am. Compl.* [#82], at 30 (Request for Relief); *see also* ¶¶ 88-89, 92, 120, 167-68. While Plaintiff asserts ongoing violations as to his rights in connection with the BOP (*see id.* at ¶ 155 and the Verified Supplemental Complaint [#168]), Plaintiff does not complain of any ongoing violations by the individual Defendants. Accordingly, Plaintiff's request for declaratory relief against the individual Defendants in their official capacities is barred by the Eleventh Amendment. *See Sarno v. Reilly*, No 12-cv-00280-REB-KLM, 2013 WL 1151818, at *5 (D. Colo. Jan. 17, 2013) ("although plaintiff asserts otherwise, his declaratory judgment claim seeks retroactive relief. . . . Plaintiff seeks a declaration from the Court that Defendants, in the past, violated his rights"). Similarly, while Plaintiff states in a conclusory fashion at the outset of the Fourth Amended Complaint [#82] that he is seeking injunctive relief against all the named Defendants (*id.* at 3), it is clear from a review of his allegations that he does not actually seek such relief as to the individual Defendants. *See id.*, ¶¶ 88-89, 92, 120, 167-68. Again, the BOP is the only Defendant that Plaintiff complains about as to ongoing conduct that would be subject to injunctive relief. Therefore, the injunctive relief claim against the individual Defendants in their official capacities is also barred by the Eleventh Amendment.

Based on the foregoing, the Court recommends that Plaintiff's official capacity claims against the individual Defendants be **dismissed without prejudice** for lack of subject matter jurisdiction.

## 2. Whether There is a *Bivens* Remedy as to the Individual Capacity Claims for Constitutional Violations

Defendants argue that there is not a *Bivens* remedy for, and that a *Bivens* remedy should not be extended to, Plaintiff's alleged violations by the Individual Defendants of his First, Fifth, and Eighth Amendment rights in the prison context (Claims One A, One B, One C, One E, Two A, Two B, Three A, Three B, Three C, Three D, Five A, Five B, Five C, and Five E).[7]  Thus, Defendants argue that these claims against the individual Defendants should be dismissed for failure to state a claim upon which relief can be granted.  *Mot. Dismiss* [#133], at 10-15.

The Court notes that Claims One A, One B, One C, and One E assert an Eighth Amendment deliberate indifference claim, a Fifth Amendment equal protection claim, a First Amendment retaliation claim, and a First Amendment establishment clause claim against Defendants Cundiff, Jones, Izzetti, and Ruda-Sorrenti.  *Mot. Dismiss* [#133], at 10.  Claims Two A and Two B assert an Eighth Amendment deliberate indifference claim and a Fifth Amendment equal protection claim against Defendants Snider and Alvarez.  *Id.* at 10-11. Claims Three A, Three B, Three C, and Three D assert an Eighth Amendment deliberate indifference claim, a Fifth Amendment equal protection claim, a First Amendment retaliation claim, and a First Amendment association claim against Defendant Shepherd.  *Id.* at 11. Finally, Claims Five A, Five B, Five C, and Five E assert an Eighth Amendment deliberate indifference claim, a Fifth Amendment equal protection claim, a Fifth Amendment due process claim, and a First Amendment retaliation claim against Defendants Oba and

---

[7] Defendants do not challenge the RFRA claim against Defendant Shepherd (Claim Three E) on this basis, *see* Motion to Dismiss [#133] at 4, and the Court thus does not address whether there is a *Bivens* remedy for such claim.

Olguin. *Id.*[8] As noted previously, Plaintiff asserts that he is suing the individual Defendants "in their individual capacities for compensatory and punitive damages. . . ." *Second Am. Compl.* [#82], at 3.

"*Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), 'creates a cause of action only against federal officials in their individual capacities for money damages . . . ." *Huerta v. Oliver*, No. 17-cv-00988-RBJ-KLM, 2019 WL 399299, at *5 (D. Colo. Jan. 31, 2019) (citation omitted). In *Bivens*, the Supreme Court "held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" under the Fourth Amendment. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (citing *Bivens*, 403 U.S. at 397). The Supreme Court has only twice since then recognized *Bivens* claims. *Id.* at 1854-55. In *Davis v. Passman*, 442 U.S. 228 (1979), "an administrative assistant sued a Congressman for firing her because she was a woman," and the Supreme Court "held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination." *Abbasi*, 137 S. Ct. at 1854. In *Carlson v. Green*, 446 U.S. 14 (1980), "a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma," and the Supreme Court "held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment." *Abbasi*, 137 S. Ct. at 1855.

---

[8] It was previously recommended that the portion of Claim Five against Olguin based on her performance of medical or related functions be dismissed based on absolute immunity under § 233(a).

The Supreme Court stated that its "expressed caution as to implied causes of action under congressional statutes led to similar caution with respect to the *Bivens* context, where the action is implied to enforce the Constitution itself." *Abbasi*, 137 S. Ct. at 1857. Given the change in the approach to recognizing implied causes of action, the Supreme Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." *Id.* Thus, the Court has "'consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* (citing *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)); *see also Wilkie v. Robbins*, 551 U.S. 537, 549-550 (2007) (summarizing the basic considerations underlying past Supreme Court decisions declining to create *Bivens* claims and applying a two-part analysis to the creation of *Bivens* liability).

The first step in determining whether a *Bivens* claim can proceed is to determine whether the case presents a new *Bivens* context. *Abbasi*, 137 S. Ct. at 1859-60. This is determined by whether "the case is different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Id.* at 1859. If so, then the context is new. *Id.* In other words, the Court should determine whether the claims at issue differ meaningfully from "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Id.* at 1869. The test is more than simply determining "whether the asserted constitutional right was at issue in a previous *Bivens* case," and, if so, "whether the mechanism of injury was the same mechanism of injury in a previous *Bivens* case." *Id.* at 1859. Rather, as a non-exhaustive list of examples, "[a] case might differ in a meaningful [enough] way [to make a given context a new one] because of the rank of the officers involved; the constitutional right at issue; the generality

or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860.

The Court finds that Plaintiff's First and Fifth Amendment claims arise in a new context.[9] The Supreme Court "ha[s] never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); *see also Censke v. Fox*, No. CIV-17-1116-C, 2018 WL 4624863, at *2 (W.D. Okla. Aug. 17, 2018) ("The Supreme Court has not extended *Bivens* liability to First Amendment retaliation claims"); *Ajaj I*, 2016 WL 6212518, at *3 (D. Colo. Oct. 25, 2016) (dismissing First Amendment individual capacity claims under *Bivens*).[10] Nor has the Supreme Court extended *Bivens* to Fifth Amendment equal protection or due process claims in the prison context. *Malesko*, 534 U.S. at 74 (rejecting a *Bivens* remedy for procedural due process claim brought by a federal inmate); *see also Pauley on Behalf of Asatru/Odinist Faith Community v. Samuels,* No. 15-cv-158,

---

[9] The First Amendment claims are Claims One C, Three C, and Five E (retaliation), One E (establishment clause), and Three D and Four B (association). The Fifth Amendment claims are Claims One B, Two B, Three B, Four C, and Five B (equal protection), and Five C (due process).

[10] Three Circuits have found that a First Amendment retaliation claim *may* be available for a claim of First Amendment retaliation, although they did not decide that definitively. *See Bouchard v. Olmstead*, 775 F. App'x 701, 703 (2d Cir. 2019) ("assuming, without deciding"); *Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017) ("[W]hether *Bivens* extends to First Amendment retaliation claims remains inconclusive."); *Krug v. Pellicane*, 703 F. App'x 558 (9th Cir. 2017) ("[a]ssuming without deciding"). However, as noted by another District Court, "the strong trend . . . goes the opposite direction." *Himmelreich v. Fed. Bureau of Prisons*, No. 4:10CV2404, 2019 WL 4694217, at *9 (N.D. Ohio Sep. 25, 2019). The Court agrees with the *Himmelreich* court that "[n]ationwide, district courts seem to be in agreement that, post *Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment." *Id.*

2019 WL 4600195, at *8-9 (W.D. Pa. Sep. 23, 2019) ("Fifth Amendment equal protection claim would extend a *Bivens* remedy to a new class of plaintiffs—prisoners who adhere to Odinism—as well as create a new class of defendants—federal prison officials. . . . Thus, Plaintiffs' Fifth Amendment equal protection claim presents a new *Bivens* context.); *Thomas v. Paul*, No. 16-cv-12-SM, 2019 WL 4451349, at *3 (D.N.H. Sep. 17, 2019) (finding that a prisoner's Fifth Amendment equal protection violation arising in a prison presented a new context for *Bivens*); *Ojo v. United States*, 364 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) (same).

As to Plaintiff's Eighth Amendment claims, the Court agrees with Defendants that these claims also arise in a new context. The only one of the trio of *Bivens* cases which addressed the Eighth Amendment was *Carlson* in which, as noted above, federal jailers were sued for failing to treat a prisoner's asthma as a result of which the prisoner died. 446 U.S. at 16 and n.1. Here, Plaintiff's Eighth Amendment claims focus on the failure to provide a medical diet to Plaintiff (Claim One A); a failure to remove Plaintiff from his cell prior to the use of oleoresin capsicum ("OC") (pepper spray) (Claim Two A); failing to protect Plaintiff through actions including calling him a "snitch" (Claim Three A); and the denial of certain medications for Plaintiff's medical conditions (Claim Five A). Given the Supreme Court's explicit instruction regarding the low threshold for finding a new context, *see Abbasi*, 137 S. Ct. at 1859-60, the Court finds that these claims bear little resemblance to *Carlson.* Unlike *Carlson*, this case does not involve an inmate who died or suffered serious injury as a result of prison medical professionals' failure to treat a medical condition.[11]

---

[11] Even if the above-referenced claims could be construed as related to medical treatment, they are at most claims for "prevent[ing] an inmate from receiving treatment or deny[ing] him access to medical personnel," which the Tenth Circuit has expressly distinguished from a deliberate indifference claim that "a medical professional … fail[ed] to treat a serious medical condition

Accordingly, the Court finds that the Eighth Amendment claims also constitute a new context. *See Abbasi*, 137 S. Ct. at 1864 (stating that "even a modest extension is still an extension"). Plaintiff's claims are similar to deliberate-indifference claims by inmates that courts in this district have found to arise in a new context post-*Abbasi*. *See, e.g.*, *Huerta*, 2019 WL 399229, at *15 (deliberate indifference claim for "use of handcuffs with blackbox restraints" "bears little resemblance to *Carlson* and therefore … constitutes a new context") *Lovett v. Ruda*, No. 17-cv-02010-PAB-KLM, 2018 WL 4659111, **2, 8 (D. Colo. Sept. 28, 2018) (deliberate indifference claim based on "deprivation of adequate nutrition" through failure to provide a special diet arose in a new context); *Cuevas v. United States*, No. 16-cv-00299-MSK-KMT, 2018 WL 1399910, at *4 (D. Colo. Mar. 19, 2018) (failure to protect deliberate indifference claim presented "a 'new context' from that of *Carlson*"); *see also Hoffman v. Preston*, Case No. 1:16-cv-01617-LJO-SAB, 2020 WL 58039, at *2 (E.D. Cal. Jan. 6, 2020) (finding that a failure to protect claim is a new *Bivens* context).

The Court notes, however, as to Plaintiff's failure to protect claim (Claim Three A) that the Third Circuit found that a failure to protect claim did not present a new context in light of *Farmer v. Brennan*, 511 U.S. 825 (1994). *Bristian v. Levi*, 912 F.2d 79, 90-92 (3rd Cir. 2018). *Farmer* was not, however, included in the list of recognized *Bivens* contexts discussed in *Abbasi*. Moreover, Plaintiff's claim is entirely distinct from that in *Farmer*. That case involved a claim by a transsexual prisoner who alleged that defendants "placed petitioner in its general population despite knowledge that the penitentiary had a violent environment and a history of inmate assaults, and despite knowledge that petitioner, as a

---

properly." *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

transsexual who 'project[ed] feminine characteristics,' would be particularly vulnerable to sexual attack. . . ." 511 U.S. at 830-31. The petitioner was subsequently beaten and raped by another inmate. *Id.* at 829. Plaintiff's failure to protect claim in this case involves allegations that Defendant Shepard called Plaintiff a "snitch" and other names and "openly threatened Plaintiff's life and safety," but no allegations of an attack on or injury to Plaintiff from other inmates. *Second Am. Compl.* [#82], ¶¶ 117-120.

Since the Court has found that the context is new as to Plaintiff's claims, the Court must assess: (1) whether there is any alternative remedial process; and (2) whether any special factors counsel hesitation against devising a new *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1857. Either consideration alone is sufficient to prevent devising a new *Bivens* remedy. *Id.*

The Court first finds that there are alternative remedies available to Plaintiff. As this Court found in the *Huerta* case, Plaintiff has at least three alternative, existing processes to protect his Eighth Amendment interests. 2019 WL 399299, at *5. First, Plaintiff may seek injunctive relief. *Id.* (citing *Malesko*, 534 U.S. at 74). Unlike the *Bivens* remedy, which courts "have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Malesko*, 534 U.S. at 74; *see also K.B. v. Perez*, 664 F. App'x 756, 759 (10th Cir. 2016) (recognizing that suits for injunctive relief constitute alternative means for preventing unconstitutional conduct in the prison context). Second, Plaintiff may seek a remedy under the mandamus statute, 28 U.S.C. § 1361. *Huerta*, 2019 WL 399299, at *5 (citing *Custard v. Allred*, No. 13-cv-02296-REB-CBS, 2015 WL 328626, at *4 (D. Colo. Jan. 26, 2015) (declining to extend a *Bivens* damages remedy where alternative avenues of relief

existed, in part because "Plaintiff could also pursue a remedy through the mandamus statute")). Third, Plaintiff may seek a remedy for his concerns through the prisoner grievance system. *Id.*; *see also Ajaj I*, 2017 WL 219343, at *2 & n.6 (finding that the plaintiff had alternative remedies, such as filing a suit for injunctive relief or filing a grievance as part of the BOP's administrative remedy program). The Court finds that these alternative remedies foreclose the creation of a *Bivens* remedy for Plaintiff's First, Fifth, and Eighth Amendment claims.

The Court also finds that there are no special factors that counsel against the creation of a *Bivens* remedy. The Court may create a new *Bivens* remedy only if there are no special factors counseling hesitation against the creation of such a remedy. *Wilkie*, 551 U.S. at 550. "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58. "Thus, to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative. *Id.* at 1858. As explained by the Second Circuit:

> The only relevant threshold—that a factor "counsels hesitation"—is remarkably low." It is at the opposite end of the continuum from the unflagging duty to exercise jurisdiction. Hesitation is a pause, not a full stop, or an abstention; and to counsel is not to require. "Hesitation" is "counseled" whenever thoughtful discretion would pause even to consider.

*Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (citation omitted).

The Court adopts its analysis in *Huerta* in finding that the factors counseling hesitation are more than sufficient to meet this low threshold. As noted in that case:

> In the context of prison management, the Supreme Court recognizes the value of balancing inmates' interests against the administrative needs of the prison, noting that a degree of flexibility and accommodation of prison

> discretion is required. *See, e.g.*, *Wolff* [*v. McConnell*], 418 U.S. [539,] 566-67 [(1974)] (stating that correctional institutions "must have the necessary discretion without being subject to unduly crippling constitutional impediments[.]"). Courts owe substantial deference to the professional judgment of prison administrators, and absent concerns that prison inmates will be otherwise unable to redress their claims, this Court hesitates to create a new cause of action that may be brought against prison officials for monetary damages.

*Huerta*, 2019 WL 399299, at *17. Moreover, the *Huerta* decision recognized that prisoners "already have a variety of ways" to pursue their constitutional claims, and that "denying *Bivens* claims for money damages will not deny prisoners effective relief for their claims. *Id.* "On the other hand, creating a new remedy under *Bivens* for prisoners to gain relief by suing prison employees individually will interfere with prison management and add to the Court's already heavy burden of prisoner litigation. *Id.* (citing *K.B.*, 178 F. Supp. 3d at 1112). As both of the relevant factors weigh against extending *Bivens* to Plaintiff's claims, the Court agrees with Defendants that there is no *Bivens* remedy as to Plaintiff's claims against them in their individual capacities under the First, Fifth, or Eighth Amendment.

Accordingly, the Court recommends that the Motion to Dismiss [#133] be **granted** as to Claims One A, One B, One C, and One E (against Defendants Cundiff, Jones, Izzetti, and Ruda-Sorrenti); Claims Two A and Two B (against Defendants Alvarez and Snider); Claims Three A, Three B, Three C, and Three D (against Defendant Shepherd); and Claims Five A, Five B, Five C, and Five E (against Oba and Olguin), and that these claims be **dismissed with prejudice** for failure to state a claim.

### 3.    Conclusion

Based on the above analysis, it is recommended that all the official capacity claims against the individual Defendants be dismissed. It is recommended that the individual

capacity claims be dismissed as to the claims against the individual Defendants under the First, Fifth, and Eighth Amendments. This results in the dismissal of all claims against Defendants Jones, Cundiff, Izzetti, Ruda-Sorrenti, Alvarez, Snider, Olguin, and Oba, and it is therefore recommended that they be **dismissed** from the case. The only remaining claim against an individual Defendant is the individual capacity claim under RFRA against Defendant Shepherd (Claim Three E).

**E.** **Whether Plaintiff has Plausibly Pled the Constitutional Claims**

The Court notes that some of the constitutional claims are asserted against the BOP and some are asserted against the individual Defendants. The Court has recommended the dismissal of the claims as to all the individual Defendants except the RFRA claim against Defendant Shepherd (which Defendants did not seek to dismiss under *Bivens*). The Court thus turns to the remaining claims.

**1.** **Equal Protection Claims Against the BOP**

Plaintiff asserts an equal protection claim (Claim Four C) against the BOP for the denial of video conferencing visits. The Court also found in Section I, *supra*, that Plaintiff asserts a claim against the BOP for failure to provide a medical diet in Claim One. To the extent the medical diet claim in Claim One is asserted under the equal protection clause, the Court addresses this claim because the arguments in the Motion to Dismiss [#133] as to the claim (One B) against the individual Defendants (that Plaintiff has not met the "similarly situated" requirement), *id.* at 16, apply equally to the BOP.

"The equal protection clause provides that '[no state shall ... deny to any person within its jurisdiction the equal protection of the laws.'" *Grace United Methodist Church v.*

*City of Cheyenne,* 451 F.3d 643, 659 (10th Cir. 2006) (quoting U.S. Const. amend. XIV, § 1). "Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" *Id.* (quoting *City of Cliburn v. Cliburn Living Ctr.,* 473 U.S. 432, 439 (1985)). "To properly allege an equal protection claim, a plaintiff must plead sufficient facts to 'demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Owen v. Medina*, No. 12-cv-00094-WJM-CBS, 2012 WL 7800837, at *7 (D. Colo. Dec. 18, 2012) (citation omitted). The Court agrees with Defendants that the equal protection claims against the BOP should be dismissed because they fail to satisfy the similarly-situated requirement of equal protection.

### a.    Claim One (Failure to Provide a Medical Diet)

As to the failure to provide a medical diet alleged in Claim One, Plaintiff asserts as to the similarly-situated requirement that "similarly situated non-Arab prisoners" receive medical diets. *Second Am. Compl.* [#82], ¶ 76. Plaintiff does not provide any specific comparator or describe how they are similarly situated, let alone show that they are "similarly situated in all material respects." *See Owen*, 2012 WL 7800837, at *7. For example, Plaintiff does not identify housing assignments, security classifications, or any other specific characteristics that show how these other inmates are similarly situated to Plaintiff. *Id.*; *see also Marsh v. Newton*, No. 97-2157, 1998 WL 39235, at *2 (10th Cir. 1998) (noting as factors to be considered "the length of sentences the inmates are serving, the inmates' security classifications, the types of crimes for which the inmates have been incarcerated, and any special characteristics").

Plaintiff's Response [#144] as to this issue merely rehashes the allegations, and does not meaningfully address the similarly-situated requirement or why Plaintiff contends that it is satisfied. *Id.* at 16. The Court thus finds that Plaintiff's allegations in Claim One related to the BOP's failure to provide a medical diet fail to state a plausible equal protection claim. *See Nunn v. Reich*, No. 15-cv-02166-GPG, 2015 WL 12857322, at *3 (D. Colo. Oct. 7, 2015) ("Mr. Nunn's vague and conclusory assertions that Defendants treated him differently from persons who were similarly situated, without specific supporting factual allegations, fail to state an arguable equal protection violation") (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1323 (10th Cir. 2010)); *see also Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009) (Mr. Straley's failure "to identify any similarly situated individual that has been given any different or more beneficial treatment" precluded an equal protection claim).

Based on the foregoing, it is recommended that the portion of Claim One that asserts an equal protection claim against the BOP for the failure to provide a medical diet be **dismissed with prejudice** for failure to state a claim under Rule 12(b)(6).

**b. Claim Four C**

Claim Four C asserts an equal protection claim related to the BOP's failure to provide video conferencing visits. Plaintiff asserts that, unlike him, deaf persons, "Guantanomo detainees" and "detainees at U.S. Bagram Air Base" are provided video conferencing visits. Plaintiff does not, and cannot, state that these other inmates are similarly situated to him. As Defendants note, "by their very descriptions, deaf prisoners and Guantanamo detainees are categorically different from Plaintiff." *Reply* [#151] at 12. Plaintiff also does not make

allegations about the circumstances of the alleged video conversations by these other comparators, and establish that Plaintiff's circumstances are similar.

Accordingly, it is recommended that Claim Four C be **dismissed with prejudice** for failure to state a claim under Rule 12(b)(6).

## 2.    First Amendment Association Claim Against the BOP (Claim Four B)

This claim relates to Defendants' alleged denial of the use of videoconferencing for Plaintiff to be able to communicate with his family.   The Court previously rejected Defendants' argument that Claim Four should be dismissed as moot.  Thus, the Court turns to the merits of Claim Four B.

"[F]reedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  To state a claim, an inmate first must plausibly allege some restriction of his First Amendment association rights caused by a prison practice.   *See, e.g.*, *Peele v. Klemm*, 663 F. App'x 127, 130 (3d Cir. 2016). Additionally, "'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'"   *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)).

Defendants argue that Plaintiff has not plead limitations on alternative means of exercising his association rights.   *See Mot. Dismiss* [#133], at 24.  Moreover, it is argued that Plaintiff does not cite any Tenth Circuit case or case in this district recognizing a First Amendment association claim related to the failure to provide video conferencing.   *Id*. Defendants further assert that the Fourth Circuit case that Plaintiff alleges in support of his

claim, *Heyer v. United States Bureau of Prisons*, 849 F.3d 202 (4th Cir. 2017), is distinguishable. *Id.* Finally, Defendants aver that Plaintiff has not pleaded any facts "from which a plausible inference can be drawn" that the video conferencing restrictions are "not reasonably related to a legitimate penological interest." *Id.*

Defendants' arguments are rejected. The Court finds that the Fourth Circuit's decision in *Heyer* is persuasive, and that it supports Plaintiff's First Amendment association claim against the BOP. In *Heyer,* the plaintiff alleged that, despite his confinement, he retained a First Amendment right to communicate with those outside the prison, and that the failure to provide him with access to a videophone improperly restricted his First Amendment rights. 849 F.3d at 212. The Fourth Circuit noted that "[c]ourts have generally concluded that the First Amendment rights retained by convicted prisoners include the right to communicate with others beyond the prison walls." *Id.* at 213 (citing cases). In fact, the BOP acknowledged that in *Heyer* case. *Id.* The BOP nonetheless argued in *Heyer* that the refusal to provide the plaintiff with a videophone did not infringe his First Amendment rights because he could communicate with persons outside the prison through use of a TTY device that "utilize[d] a keyboard and permit[ted] the transmission of written messages between TTY users." *Id.* The Fourth Circuit rejected the BOP's argument, finding "the evidence establish[ed] that Heyer cannot communicate effectively through the only means that BOP ma[de] available to him," as he was unable to effectively communicate in written English. *Id.* The *Heyer* court then went on to analyze whether the policy was "reasonably related to legitimate penological interests[;]" specifically, the BOP's contention "that its TTY-only policy furthers its legitimate interest in maintaining prison security." *Id.* at 214-15. The Fourth Circuit found, after analyzing the *Turner* factors, that "a factfinder could reasonably

conclude that BOP's refusal to provide a videophone is an exaggerated response to the perceived security concerns." *Id.* at 218. Accordingly, the court found that the district court erred in granting summary judgment as to this claim. *Id.*

Here, Plaintiff alleges, as did Mr. Heyer, that he cannot communicate effectively (indeed he cannot communicate at all with family and friends) "through the only means that BOP makes available to him[.]" *Second Am. Compl.* [#82], at ¶¶ 125-26, 149-50. The Court agrees with and adopts *Heyer's* finding that such an allegation invokes a First Amendment association right. *See* 849 F.3d at 214. Plaintiff's allegations that video conferencing "is the only readily available means for him to communicate with his mother and his family[,]" and that he has been denied the ability to communicate with them, which must be taken as true at this stage of the litigation, plausibly state a claim that Plaintiff's First Amendment rights are being impinged. *Id.*

As to Defendants' argument that Plaintiff has not alleged facts "from which a plausible inference can be drawn" that the videoconferencing restrictions were "not reasonably related to a legitimate penological interest," Motion to Dismiss [#133] at 24, again the Court disagrees. Plaintiff has alleged that "prison security experts stated that video-conferencing . . . serve[s] legitimate governmental purpose and [a] valid penological interest", and that deaf inmates and detainees at other facilities are allowed to have video visits. *Second Am. Compl.* [#82], ¶¶ 140-142. Moreover, Plaintiff alleges that the BOP has failed to explain or give any reason to him in its responses to Plaintiff's administrative grievances why it provides videoconferencing for deaf inmates but refuses to extend the same practice to Plaintiff. *Id.* ¶ 143. The Court can reasonably infer from these allegations that Plaintiff has plausibly pled that there is no legitimate penological interest for the restriction. Further,

Defendants have not affirmatively stated any legitimate penological interest for the videoconferencing restriction.[12]

Accordingly, the Court finds for purposes of the Motion to Dismiss [#133] that Plaintiff has plausibly stated a First Amendment association claim, and recommends that the Motion to Dismiss [#133] be **denied** as to Claim Four B against the BOP.

### 3. RFRA Claim Against the BOP (Claim Four A)

The final claim asserted against the BOP is a RFRA claim relating to the denial of videoconferencing visits. Defendants' only argument in the Motion to Dismiss [#133] as to why this claim should be dismissed is that it is moot, which argument was rejected in Section III.B, *supra*. Defendants did not argue in the Motion to Dismiss [#133] that this claim should be dismissed on the merits. Further, the Court previously found in the Order [#125] of January 29, 2019, that the claim was not frivolous and could proceed. *Id.* at 10. Accordingly, this claim survives the Motion to Dismiss [#133].

### 4. RFRA Claim Against Defendant Shepherd (Claim Thee E)

The Motion to Dismiss [#133] argues that the RFRA claim against Shepherd should be dismissed for two reasons: (1) RFRA does not permit Plaintiff to sue an individual defendant for damages; and (2) Plaintiff fails to allege a violation of clearly established law, as he must to survive a motion to dismiss based on qualified immunity. *Id.* at 24. The Court agrees with Defendants, for the reasons explained below, that Defendant Shepherd is entitled to qualified immunity on this case.

---

[12] The *Turner* factors are thus inapplicable at this stage of the litigation.

"RFRA bars the federal government from 'substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability,' unless the government shows that the burden '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 746 (10th Cir. 2019) (citations omitted). A plaintiff establishes a prima facie claim under RFRA by proving: "'(1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion.'" *Id.* (citation omitted). The Tenth Circuit in *Hale* noted that RFRA does not waive the federal government's sovereign immunity from damages," but declined to consider whether RFRA damages are available against individual officers." *Id.* at 744 n. 2. The Tenth Circuit has thus not yet decided whether RFRA damages claims can be asserted against individual defendants." *Id.*

To date, it appears that only the Second and Third Circuits have held that RFRA damages claims are available against individual defendants. *Tanvir v. Tanzin*, 894 F.3d 449, 453 (2d Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 304 (3d Cir. 2016). The Court notes, however, that three judges on the Second Circuit dissented in two separate opinions from the denial of rehearing *en banc* in *Tanvir*. *See Tanvir v. Tanzin*, 915 F.3d 898, 904 (2d Cir. 2019) (Jacobs, J., dissenting "from the denial of *en banc* review because the panel opinion is quite wrong and actually dangerous"); *id.* at 905 (Cabranes, J., dissenting from what he characterized as a "decision[ ] that the Supreme Court would predictably overturn"). Recently, the Supreme Court granted certiorari on this question. *Tanzin v. Tanvir*, No. 19-71, 2019 WL 6222538, at *1 (U.S. Nov. 22, 2019).

From the foregoing, the Court finds that even if Plaintiff has stated a constitutional violation, which is doubtful given that the Tenth Circuit has not addressed whether a RFRA claim for damages is available against an individual officer, the Court agrees that the law is not clearly established as to this issue. While Plaintiff cites a number of cases in his Response [#144], at 12, he has not shown that there is a Supreme Court or Tenth Circuit decision that is on point in finding that RFRA gives rise to individual-capacity liability for monetary damages, or that "'the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (citation omitted).

Plaintiff notes, however, that Magistrate Judge Gallagher recommended in the September 2018 Recommendation [#120] that the RFRA claim be allowed to proceed against Shepherd (*id.* at 8-9), and that Judge Moore affirmed this portion of the Recommendation [#125]. *See Resp.* [#144], at 13. In actuality, Magistrate Judge Gallagher simply "declined to recommend that such claim is appropriate for summary dismissal at this time." [#120], at 9. The Recommendation [#120] did not address qualified immunity, although Magistrate Judge Gallagher did note, consistent with this Court's ruling, that "it is unsettled whether RFRA authorizes individual capacity lawsuits against governmental defendants and whether RFRA authorizes money damages." *Id.* at 8. As Magistrate Judge Gallagher did not rule on the merits of the RFRA claim against Shepherd, his Recommendation [#120] does not support Plaintiff's argument.

Based on the foregoing, it is recommended that Defendant Shepherd be **granted** qualified immunity on the RFRA claim against him (Claim Three E), that Claim Three E be **dismissed without prejudice**, and that Shepherd be **dismissed** from the case.

**F.     The FTCA Claims (Claims One D, One G, Two C, Five D, Six A, Six B, and Six C)**

**1.     The Motion to Dismiss [#133]**

The Motion to Dismiss [#133] asserts that all the FTCA claims should be dismissed under Rule 12(b)(6). *Id.* at 28-30.  First, it is argued that to the extent the FTCA claims can be construed to allege medical negligence, the claims must be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff did not file a certificate of review as required by Colo. Rev. Stat. § 13-20-602(1)(a) & 3(a)(II).  *Id.* at 28-29.  Second, Defendants argue that  the FTCA claims must be dismissed because none of these claims has a private analogue in state law.  *Id.* at 29-30.

The Court first addresses the private analogue argument relevant to the FTCA.  The Tenth Circuit has stated that "the United States is liable in tort claims 'in the same manner and to the same extent as a private individual under like circumstances,' 28 U.S.C. § 2674, 'in accordance with the law of the place where the omission occurred,' 28 U.S.C. § 1346(b)." *Ayala v. United States*, 49 F.3d 607, 610 (10th Cir. 1995) (citation omitted).  "Even if specific behavior is statutorily required of a federal employee, the government is not liable under the FTCA unless state law recognizes a comparative liability for private persons."  *Id.*  Thus, "the FTCA is intended to limit the United States' waiver of sovereign immunity to well-established torts where clear, private analogs exist under state tort law."  *Hammonds v. United States*, No. 16-1230 GBW/KRS, 2018 WL 1399183, at *3 (D.N.M. March 29, 2018).  "In the absence of a 'private analog' under state law creating liability, the United States cannot be liable under the FTCA" and the Court lacks subject matter jurisdiction over the FTCA claims. *Risco v. United States*, No. 16-2653-CM, 2017 WL 1408219, at *3 (D. Kan. April 20, 2017).

The Court therefore must look to Colorado law to determine whether there is a private analogue, since the alleged tortious activity occurred here. *See Ayala*, 49 F.3d at 611.

Colorado recognizes a general tort of negligence, *see, e.g.*, *Colo. Jury Instr.*, Civil Ch. 9 Intro. Under Colorado law "the elements of a negligence claim are that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injury." *Ayala*, 49 F.3d at 611 (citing *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo.1992)). "The threshold question in any negligence action is therefore 'whether the defendant owed a legal duty to protect the plaintiff against injury.'" *Id.* (quoting *Connes v. Molalla Transp. Sys., Inc.,* 831 P.2d 1316, 1320 (Colo.1992)). "Whether such a duty exists is a question of law to be determined by the court." *Id.*

Defendants aver that Claims One D (failure to provide a medical diet), Five D (denial of medication), and Six C (failure to provide melatonin/modafinil) all assert that BOP employees were negligent in failing to provide Plaintiff with prescribed food and medications. *Mot. Dismiss* [#133] at 29-30. The Court also construes Claim Two C (exposure to OC (pepper gas)) and Claim Six A (denial of a toilet during recreation), as claims related to negligence in connection with Plaintiff's medical condition, as further discussed below. Defendants assert that no private person would have a duty to provide Plaintiff with the prescribed food and medication (or other accommodations).

The Court rejects Defendants' argument. As noted by Plaintiff (Response [#144], at 35), the Tenth Circuit in *Ajaj I* rejected a similar argument under the FTCA. *Ajaj v. United States*, 293 F. App'x 575, 581 (10th Cir. 2008). The Tenth Circuit stated that "while 'Colorado courts have not yet addressed whether prison officials owe a duty of care to inmates regarding their medical needs,' if specifically presented with the question, we

-43-

believe Colorado law would impose a duty of care on prison officials to "protect[ ] inmates' health and safety.'" *Id.* (citation omitted). The Tenth Circuit made clear that "where an inmate possesses an obvious medical need. . . , and prison administrators fail to respond to that need, the inmate may have a viable negligence claim as a result of the alleged breach of care." *Id.*; *see also Jones v. United States*, 355 F. App'x 117, 120 (10th Cir. 2009) (the BOP is statutorily required to "'provide for the safekeeping, care, and subsistence' of persons in its custody") (quoting 18 U.S.C. § 4042(a)(2)).

Here, contrary to Defendants' assertion, Plaintiff has alleged an obvious medical need in connection with his claims. In Claim One D, Plaintiff alleges that "Dr. Santini (ADX-Clinical Director) issued a written medical diet order" for Plaintiff which he alleges Defendants refused to follow. *Second Am. Compl.* [#82], at 7-8. In Claim Two C, Plaintiff alleges that a doctor's report and memorandum stated that Plaintiff must have maximum breathing capacity due to lowered lung capacity, and that Plaintiff's medical condition required that he be protected from dust, chemicals, or respiratory irritants. *Id.* at 18. In Claim Five D, Plaintiff alleges that Defendants canceled prescribed medication for spinal stenosis which was later reinstated by Dr. Yutzy. *Id.* at 25. In Claim Six A, Plaintiff alleges that Defendants did not accommodate Plaintiff's toilet needs as ordered by Dr. Santini. *Id.* at 27. Finally, in Claim Six C Plaintiff alleges that Defendants failed to provide melatonin and modafinil for severe insomnia that were prescribed by Dr. Erwin. *Id.* at 28.[13]

---

[13] The Court notes that Claim Six B could also be construed to state a claim of negligence in connection with Plaintiff's medical condition, as Plaintiff alleges that he requested that ADX accommodate his medical conditions by removing the use of restraints during his legal visits. *Id.* at 27. However, Plaintiff has not alleged an obvious medical need for the lack of restraints, other than a conclusory statement that his medical conditions required this accommodation. *Id.* Plaintiff also alleges, however, that the use of restraints was unjustified and unnecessary as they are

Accordingly, the Court recommends that the argument in the Motion to Dismiss [#133] that there is no private analogue be **denied** as to Claims One D, Two C, Five D, Six A, and Six C under the FTCA.

The Court also recommends **denial** of the argument in the Motion to Dismiss [#133] that, to the extent the FTCA claims could be construed to allege medical negligence, they should be dismissed because no certificate of review was filed. There is no indication in the Second Amended Complaint [#82] that Plaintiff is suing a "licensed professional" for "professional negligence[.]" Colo. Rev. Stat. § 13-20-602(1)(a).[14] The claims assert only a violation of Plaintiff's constitutional rights.

Plaintiff's remaining FTCA claims at issue in the Motion to Dismiss [#133] are One G (interference with religious diet) and Six B (use of restraints during visitation). Defendants argue that these claims appear to arise out of the alleged failure of BOP staff to follow BOP rules and regulations, and assert that there is no private analogue for these claims as there is no freestanding duty for private citizens to abide by private regulations. *See Mot. Dismiss* [#133] at 30. The Court agrees with Defendants. The authority cited by Plaintiff in his Response [#144] did not address this issue, and Plaintiff did not show that a private analogue exists in regard to these claims. Further, the Second Circuit has found that there is no private analogue for an inmate's tort claims which were premised on violations of BOP regulations. *McGowan v. United States*, 825 F.3d 118, 127-28 (2d Cir. 2016).

---

removed during social visits. *Id.* The Court thus construes the claim as asserting a violation of BOP rules or regulations.

[14] The only "licensed professional" that Plaintiff names in the Complaint is Defendant Olguin, a nurse. *Second Am. Compl.* [#82], at 3.

Based on the foregoing, the Court recommends that the Motion to Dismiss [#133] be **granted** as to FTCA Claims One G and Six B, and **denied** as to Claims One D, Two C, Five D, Six A, and Six C.  It is further recommended that Claims One G and Six B be **dismissed without prejudice**.  *See Webb v. Smith*, 632 F. App'x 957, 960 (10th Cir. 2015).

## 2.    Partial Motion for Summary Judgment [#132]

The Court now turns to the United States' argument in the Motion for Partial Summary Judgment.  The United States asserts that summary judgment is appropriate as to Claims One G, Two C, Six A, and Six C because Plaintiff did not file suit within six months as required by 28 U.S.C. § 2401(b).  *Partial Mot. Summ. J.* [#132] at 3. The United States asserts it is undisputed that Plaintiff received, by certified mail, denials of FTCA administrative tort claims related to Claims One G, Two C, Six A, and Six C, which explained that Plaintiff had the right to file suit within six months.  *Id.*, Ex. 1, Statement of Undisputed Facts ¶¶ 1-20.[15]  The United States further asserts that it is undisputed that Plaintiff did not file Claims One G, Two C, Six A, or Six C within this time frame.  Plaintiff disagrees, arguing that his claims were timely filed or that his lack of timeliness should be excused.

Turning to the merits of this issue, "[a] tort claim against the United States shall be forever barred unless … action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Section 2401(b)'s "limitations requirement establishes the date after which claim is barred." *Barnes v. United States*, 776 F.3d 1134, 1139 (10th Cir.

---

[15] The Partial Motion for Summary Judgment attached a 76-page Statement of Undisputed Facts ("SUF") which set out the facts relevant to each claim.  [#132-1].  Plaintiff did not respond to the SUF or contest any of the facts.

2015) (emphasis omitted).  This limitation period, like all "limitations and conditions upon which the government consents to be sued, must be strictly observed and exceptions thereto are not to be implied."  *Id.*  However, the limitations period in § 2401(b) is not jurisdictional, and a court can toll these time limits on equitable grounds, including equitable estoppel.  *United States v. Kwai Fun Yong*, 575 U.S. 402, 410-12, 420 (2015).  The Court now turns to the claims that the United States argues are untimely.

### a.    Claim One G

As to Claim One G (interference with religious diet), the Court previously recommended that the Motion to Dismiss [#133] be granted as to this claim.  The Court also finds that summary judgment should be granted as to this claim.

The United States notes that Plaintiff filed two different administrative tort claims that arguably relate to Claim One G.  Plaintiff received final denial of the later of these two tort claims, after timely seeking reconsideration, on October 23, 2015.  Plaintiff thus had six months, or until April 23, 2016, to raise this claim in federal court.  Plaintiff has not disputed these facts.  The United States asserts, and the Court agrees, that Plaintiff did not raise this claim in his original Complaint [#1], and thus did not timely assert this claim.

While Plaintiff argues that this claim was asserted in both the initial and the First Amended Complaints (Response [#144] at 36), only the initial Complaint [#1] was filed within the six-month time frame.[16]  The paragraphs in the initial Complaint [#1] that Plaintiff references to support his argument that the claim was asserted therein are in a claim entitled "Deprivation of Medically Prescribed Diet in Violation of Constitutional and Statutory

---

[16] The First Amended Complaint was filed on June 27, 2016, almost two months after the deadline of April 23, 2016.

Rights[.]"  *Compl.* [#1], at 6.  Out of 71 paragraphs in that claim enumerated over 12 pages of the Complaint, the only references that even could arguably relate to a failure to provide Plaintiff a religious diet are that Defendants served him "food items contain[ing] ingredients derived from pork" and deprived him of "special Holiday meals" (id., ¶ 44).  However, these limited references in a lengthy claim that clearly focuses on the failure to provide a medical diet cannot plausibly be read to also state a claim based on the failure to provide Plaintiff with a "religious diet," particularly when the phrase "religious diet" is not referenced anywhere in that claim.[17]  In contrast, the Second Amended Complaint [#82] actually asserts a claim for the alleged failure to provide Plaintiff a religious meal, which is separate and apart from a claim for failure to provide Plaintiff a medical diet. The claim contains many paragraphs of allegations about Plaintiff's "sincerely held religious beliefs," the BOP's alleged failure to honor his religious diet, and the resulting "substantial[] burden [on] Plaintiff's exercise of his religion."  *Id.* at 16-17.  The Court thus finds that Plaintiff did not raise this claim until the Second Amended Complaint [#82], and the claim is untimely.

Accordingly, it is recommended that the Partial Motion for Summary Judgment [#132] be **granted** as to Claim One G.

  **b.**  **Claim Two C**

As to Claim Two C (alleged exposure to OC), the United States asserts that Plaintiff received final denial of his administrative tort claim, after timely seeking reconsideration, on March 26, 2015.  *Partial Mot. Summ. J.* [#132] at 5.  Plaintiff thus had six months, or until

---

[17] Similarly, the First Amended Complaint [#19] asserted only a claim for failure to provide Plaintiff a medical diet.  While it referred in passing to the failure to provide Plaintiff an Islamic meal, *see* ¶ 74, the allegations clearly were directed towards the failure to provide a medical diet.

September 26, 2015, to raise this claim in federal court.  *Id.*  The United States argues that Plaintiff did not raise this claim until he filed his initial complaint on December 31, 2015, and it is thus untimely.  *Id.*  Plaintiff does not dispute these facts.

Plaintiff argues, however, that summary judgment should not enter as to the claim because ADX employees prevented him from filing his initial complaint within six months of the denial of his request for reconsideration.  *Resp.* [#144], at 36.  Plaintiff refers to his Response [#53] to the United States' previously filed Partial Motion for Summary Judgment Based on Failure to Timely File FTCA Claims [#35].  *Id.*  That Response [#53] asserted that Plaintiff is entitled to equitable tolling as to his FTCA claim based on exposure to OC gas because Plaintiff was repeatedly denied access to his legal files during the relevant period.  *See id.* at 2-3.  The facts therein were verified under penalty of perjury; thus, the Court treats the Response [#53] as a sworn declaration.  *See* 28 U.S.C. § 1746.  Based on that Response [#53], the Court rejects the United States' argument that Plaintiff has not created any factual dispute as to the timeliness of his claim, *see Reply* [#154] at 5, as his allegations raise the issue of whether equitable tolling should apply.  *See Kwai Fun Wong*, 575 U.S. at 420.  Thus, the Court turns to that argument.

"[U]nder 'long-settled equitable-tolling principles[,] . . . a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.'"  *Barnes,* 776 F.3d at 1150 (citation omitted).  Here, the Court finds that this "may be a case in which 'an adversary's conduct ... prevent[ed] a prisoner from [timely] filing suit."  *United States v. Gabaldon,* 522 F.3d 1125 (10th Cir.2008).  Unlike situations where a plaintiff alleges only "*normal difficulties* in obtaining records and evidence, *Reed v. Timme*, 389 F. App'x 850,

853 (10th Cir. 2010) (emphasis in original), or ignorance of the law and limited access to materials and the law library, *Jones v. Taylor*, 484 F. App'x 241, 242 (10th Cir. 2012), the Tenth Circuit has held that "a complete denial of access to materials at a critical time may justify equitable tolling." *Id.* at 243 (citing *Gabaldon,* 522 F.3d 1121).

In *Gabaldon*, the Court held that the "complete confiscation of Mr. Gabaldon's legal materials just six weeks before his filing deadline would constitute extraordinary circumstances for the purpose of equitable tolling." 522 F.3d at 1126 (citing *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000) and *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027-28 (9th Cir. 2005)). In *Valverde*, the Second Circuit stated that "the confiscation of a prisoner's legal papers by a corrections officer shortly before the filing deadline may justify equitable tolling and permit the filing of a petition after the statute of limitations ordinarily would have run." 224 F.3d at 131. It found that "[t]he intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections officer is 'extraordinary' as a matter of law." *Id.* at 133 (citing *Morello v. James*, 810 F.3d 344, 347 (2d Cir. 1987) (holding that "intentional obstruction of a prisoner's access to the courts" by means of confiscating his legal work product "is precisely the sort of oppression that [violates] the Fourteenth Amendment")). Similarly, in *Espinoza-Matthews*, the Ninth Circuit found that equitable tolling applied when a prisoner was placed in administrative segregation and denied all access to his legal papers, despite his diligent attempts to retrieve them. 432 F.3d at 1027-28.

In this case, similar to what occurred in *Gabaldon* and the other cases referenced above, Plaintiff alleges that the ADX staff refused to provide him with his legal materials related to this case despite repeated requests during the period from January 29, 2015

(before the 6 month deadline) to October 7, 2015 (afer the expiration of the deadline). *Resp.* [#53], at 2. Plaintiff alleges that he was not provided these materials until October 29, 2015, and that these materials "contained the factual information that [was] crucial and essential for the preparation of his complaint." *Id.* at 3. The Court finds that the complete denial of access to Plaintiff's legal materials at a critical time involving the six month deadline to file his FTCA claims constitutes exceptional circumstances that justify equitable tolling.[18]

The other requirement for equitable tolling, that the plaintiff must have been pursuing his rights diligently, has also been met. Plaintiff states that he began his review of the records pertaining to his case and the applicable law after receiving his legal materials on October 29, 2015, and that he filed his complaint less than two months later, despite "suffering from chronic health problems." *Resp.* [#53] at 3. The Complaint [#1] is hand written, contains extensive facts and numerous claims, and is over 30 pages in length. The Court finds that Plaintiff's preparation of this document in less than two months after receipt of the relevant materials was reasonably diligent. *See Espinoza-Matthews*, 432 F.3d at 1027 (finding reasonable diligence where the petitioner "had only slightly over a month" after his legal file was provided to him to "try to prepare a proper [habeas] petition").

---

[18] In so finding, the Court rejects the United States' argument that equitable tolling should not be applied because Plaintiff would have needed only minimal legal materials, "such as his underlying administrative tort claim and the final denial of that claim" which "easily could have been retained in Plaintiff's legal storage space in his cell." Reply [#154] at 7. This argument ignores the realities of the situation. For Plaintiff to raise a claim in federal court, he had to draft a complaint. This required that Plaintiff have access to his legal materials that allegedly contained the facts crucial to his claims, not just information about his administrative claims. Moreover, given the denial of Plaintiff's request for his legal materials, it is reasonable to assume that he did not have, and would not have been provided, even his underlying administrative tort claims and the denials of those claims.

Based on the foregoing, the Court recommends that the Court **deny** the Partial Motion for Summary Judgment [#132] as to Claim Two C.

### c.    Claim Six A

As to Claim Six A (alleged failure to provide toilet access during outside recreation), the United States notes that Plaintiff filed two different administrative tort claims that arguably relate to Claim Six A. *Partial Mot. Summ. J.* [#132] at 5. Plaintiff received final denial of the later of these two tort claims on July 24, 2015. *Id.* at 6. Plaintiff thus had six months, or until January 24, 2016, to raise this claim in federal court. *Id.* Plaintiff does not dispute these facts. The United States asserts that Plaintiff did not raise this claim in federal court until he filed his First Amended Complaint on June 27, 2016, five months too late, and it is thus untimely. *Id.*

Plaintiff argues in response that this claim was timely because it was raised in the original Complaint [#1]. *Resp.* [#144] at 36. Plaintiff refers, for example, to his allegation that "despite Plaintiff's repeated complaints (verbally and in writing) to defendants . . . about ADX depriving him of access to outside recreation, fresh air, and sunlight for prolonged periods of time due, among other things, to the failure of ADX to accommodate his disability as required by medical orders and the previous legal agreement settlement, the defendants refused to take any corrective action to ensure that his disability needs were fully accommodated to enable him such access to outside recreation, fresh air, and sunlight like other inmates housed in the facility." *Compl.* [#1], at 21-22, ¶ 21.

Neither the allegation referenced above, nor any of Plaintiff's other allegations in the Complaint [#1] refer, however, to the need to access a toilet in outside recreation. Such a

claim is thus not facially plausible as Plaintiff did not plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In contrast, Plaintiff's First Amended Complaint [#19] has an FTCA claim (Claim Four), separate from his claim that he was denied access to outside recreation (Claim Three), asserting that he was denied access to a toilet during recreation. *See id.* at 26-27.

It is therefore recommended that the Partial Motion for Summary Judgment [#132] be **granted** as to Claim Six A, and that this claim be **dismissed without prejudice**.

### d.      Claim Six C

Finally, as to Claim Six C (alleged failure to provide melatonin and modafinil medications), the United States argued in the Partial Motion for Summary Judgment [#132] that the claim was barred because it was one week late. *Id.* at 6. In his Response [#144], Plaintiff asserted that the claim was not untimely because of the prison mailbox rule. *Id.* at 36. The United States' Reply [#154] agreed with Plaintiff that the claim was timely filed based on this mailbox rule, and withdrew this argument. *Id.* at 1-2 and n. 1.

As the United States has withdrawn the argument that Claim Six C was untimely, the Court recommends that the Motion for Partial Summary Judgment [#132] be **DENIED** as to this claim.

## IV.  Conclusion

Based upon the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion to Dismiss [#133] be **GRANTED IN PART AND DENIED IN PART**. Specifically,

IT IS HEREBY **RECOMMENDED** as to the argument that Claim Five against Defendant Olguin should be dismissed on the basis of absolute immunity that the Motion to Dismiss [#133] be **GRANTED** as to allegations related to the performance by Olguin of medical or related functions, and **DENIED** as to allegations that do not relate to the performance of medical or related functions.

IT IS FURTHER **RECOMMENDED** that to the extent the Motion to Dismiss [#133] is granted as to Claim Five against Olguin, that portion of Claim Five be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction under Rule 12(b)(1).

IT IS FURTHER **RECOMMENDED** that the Motion to Dismiss [#133] be **DENIED** as to the argument that Claim Four should be dismissed as moot or on the basis of improper venue.

IT IS FURTHER **RECOMMENDED** that the argument in the Motion to Dismiss [#133] that Claim One F (a RFRA claim against the BOP) is barred by claim preclusion be **GRANTED** as to events that occurred before the entry of Final Judgment in September 2018 in *Ajaj I*, and **DENIED** as to events that occurred thereafter.

IT IS FURTHER **RECOMMENDED** that to the extent the Motion to Dismiss [#133] is granted as to Claim One F based on claim preclusion, that portion of Claim One F should be **DISMISSED WITH PREJUDICE** for failure to state a claim.

IT IS FURTHER **RECOMMENDED** that to the extent Plaintiff asserts official capacity claims against the individual Defendants, these claims be **DISMISSED WITHOUT PREJUDICE** because they are barred under the Eleventh Amendment.

IT IS FURTHER **RECOMMENDED** that the Motion to Dismiss [#133] be **GRANTED** as to Plaintiff's alleged violations by the Individual Defendants of his First, Fifth, and Eighth Amendment rights as there is no *Bivens* remedy, and that Claims One A, One B, One C, One E, Two A, Two B, Three A, Three B, Three C, Three D, Five A, Five B, Five C, and Five E be **DISMISSED WITH PREJUDICE** for failure to state a claim.

IT IS FURTHER **RECOMMENDED** that the individual Defendants sued in connection with the above claims under the First, Fifth, and Eighth Amendments; namely, Derrick Jones, Michael Cundiff, Tammy Ruda-Sorrenti, "FNU" Izzetti, Charles Alvarez, Sean Snider, C. Olguin, and D Oba, be **DISMISSED** from the case;

IT IS FURTHER **RECOMMENDED** that the Motion to Dismiss [#133] be **GRANTED** as to Claim Four C and the portion of Claim One that can be construed to state an equal protection claim against the BOP for the alleged failure to provide a medical diet, and that these claims be **DISMISSED WITH PREJUDICE** for failure to state a claim.

IT IS FURTHER **RECOMMENDED** that the Motion to Dismiss [#133] be **DENIED** as to Claim Four B (a First Amendment Association Claim Against the BOP) and Claim Four A (a RFRA claim against the BOP).

IT IS FURTHER **RECOMMENDED** that the Motion to Dismiss [#133] be **GRANTED** as to Claim Three F asserting a RFRA claim against Defendant Shepherd, that Shepherd be **GRANTED** qualified immunity, and that Shepherd be **DISMISSED** from the case.

IT IS FURTHER **RECOMMENDED** that the Motion to Dismiss [#133] be **GRANTED** as to Claims One G and Six B under the FTCA, and that these claims be **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER **RECOMMENDED** that the Motion to Dismiss [#133] be **DENIED** as to Claims One D, Two C, Five D, Six A, and Six C under the FTCA.

IT IS FURTHER **RECOMMENDED** that the Partial Motion for Summary Judgment [#132] be **GRANTED** as to Claims One G and Six A, and **DENIED** as to Claims Two C and Six C.

IT IS FURTHER **RECOMMENDED** that the following claims remain in the action: the portion of Claim One that alleges the failure to provide a medical diet against the BOP and that does not implicate equal protection; Claim One D (an FTCA claim against the United States for failure to provide a medical diet); Claim One F (a RFRA claim against the BOP for failure to provide a religious diet); Claim Two C (an FTCA claim against the United States for exposure to OC); Claim Four A (a RFRA claim against the BOP related to the denial of video conferencing visits); Claim Four B (a First Amendment association claim against the BOP); Claim Five D (an FTCA claim against the United States related to the denial of medication); and Six C (an FTCA claim against the United States related to the failure to provide melatonin and modafinil). The only remaining Defendants are the BOP and the United States.

IT IS FURTHER **ORDERED** that Plaintiff's Motion for Judicial Notice [#159] be **DENIED**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 13, 2020

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge