**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 15-cv-02849-RM-KLM

AHMAD MOHAMMAD AJAJ,

Plaintiff,

v.

UNITED STATES OF AMERICA,
FEDERAL BUREAU OF PRISONS,
DERRICK JONES,
MICHAEL CUNDIFF,
TAMMY RUDA-SORRENTI,
"FNU" IZZETT,
CHARLES ALVAREZ,
SEAN SNIDER,
D. SHEPARD,
C. OLGUIN, and
D. OBA,

Defendants.

---

**ORDER**

---

This matter is before the Court on Plaintiff's Expedited Motion for Preliminary Injunctive Relief (the "Motion for Injunctive Relief") (ECF No. 183) and Defendants' Motion to Sever and Transfer Plaintiff's Videoconference Claims and Preliminary Injunction Motion (the "Motion to Transfer") (ECF No. 185). The motions are fully briefed, supplemental papers were filed, and the issues are ripe for resolution. The Court finds that no hearing is necessary in order to resolve the

motions.[1] Upon consideration of the motions, relevant parts of the court record, and the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

## I. BACKGROUND

The parties are well versed with the extensive background which precedes this Order so it will only be briefly summarized here.

Plaintiff is a federal inmate in the custody of the Federal Bureau of Prisons ("BOP"). At the time Plaintiff filed his complaint in 2015 he was an inmate in ADX Florence, Colorado. In February 2018, Plaintiff was transferred to Terre Haute, Indiana. (ECF No. 106.) And, in February 2019, Plaintiff was transferred to USP Allenwood, Pennsylvania where he is currently housed. (ECF No. 129.)

Plaintiff's operative complaint raised numerous claims. Defendants moved to dismiss and moved for summary judgment, seeking relief in their favor on all claims. After addressing various objections to the recommendation of the Magistrate Judge, the Court dismissed some claims and granted summary judgment on some claims. The claims which remain are against the United States and the BOP. Plaintiff's Motion for Injunctive Relief apparently relies on Claims Four A and Four B pending against the BOP. Claim Four A is brought under the Religious Freedom Restoration Act ("RFRA") and Claim Four B is brought under the First Amendment,

---

[1] Rule 65(a) of the Federal Rules of Civil Procedure does not expressly require an evidentiary hearing before a court rules on a motion for a preliminary injunction. *Northglenn Gunther Toody's, LLC v. HQ8-10410-10450 Melody Lane LLC*, 702 F. App'x 702, 705 (10th Cir. 2017) ("[N]either Fed. R. Civ. P. 65(a) nor this circuit's precedent require the district court to hold an evidentiary hearing or oral argument before deciding a motion for a preliminary injunction.") Instead, a court may deny an injunction based on the written evidence without a hearing, even if one is requested, where "receiving further evidence would be manifestly pointless." 11A Charles Alan Wright et al., Federal Practice and Procedure § 2949 (3d ed. 2020). *See also Carbajal v. Warner*, 561 F. App'x 759, 764 (10th Cir. 2014) (district court within discretion to decide whether to hold an evidentiary hearing); *Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191, 1998 WL 339465, at *3 (10th Cir. June 10, 1998) (table) (same).

alleging the BOP fails to accommodate Plaintiff's request for video conference visits with family members. Specifically, Plaintiff alleges the BOP's national policies regarding video conference visits restrict his access to his mother and family.[2]

Plaintiff asserts that emergency injunctive relief is required before he or his elderly mother dies based on an increase in risks to their health due to COVID-19. Plaintiff has several significant health issues and his mother is 76 years old with health problems. Plaintiff also alleges that he has an elderly brother who has been diagnosed with colon cancer, approximately 2,000 inmates have tested positive for COVID-19 in other institutions, and at least 38 federal prisoners have passed away as a result of COVID-19. Plaintiff does not indicate where such inmates or prisoners are located. And, in his reply, Plaintiff admits that there are not yet any confirmed cases at USP Allenwood. (ECF No. 186, p. 3.) In addition, Plaintiff provided a supplemental notice that one family member has died from COVID-19 and at least two family members have tested positive for COVID-19. (ECF No. 191.) Plaintiff contends video conference visits are provided for the deaf and TULINCS Video Service is provided at several female institutions, and there is no reason why the BOP cannot or should not also provide this resource for his visits with his family in light of the pandemic. At bottom, Plaintiff's request for injunctive relief is based on the COVID-19 pandemic.

## II. LEGAL STANDARDS

### A. Plaintiff's *Pro Se* Status

Because Plaintiff proceeds *pro se*, the Court construes Plaintiff's filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). The Court does not, however, act as

[2] As construed in the Recommendation (ECF No. 169, p. 14), to which no party objected, which the Court accepted.

Plaintiff's advocate or make arguments for him. *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1173 (10th Cir. 2013); *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). And *pro se* litigants are not excused from following the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (citations omitted).

**B. Preliminary Injunctive Relief**

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins*, *Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (quotation marks and citation omitted). Before such relief may be had, Plaintiff must establish: "'(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest.'" *Diné Citizens Against Ruining our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)). Because Plaintiff seeks a disfavored injunction,[3] he faces "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: [he] must make a 'strong showing' that these tilt in [his] favor." *Free the Nipple-Fort Collins*, 916 F.3d at 797.

[3] "Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial.… Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019) (citations omitted). Here, Plaintiff's Motion for Injunctive Relief essentially seeks all three disfavored injunctions.

## III. ANALYSIS

### A. The Motion to Transfer

Defendants, at least implicitly, acknowledge venue was proper at the time Plaintiff filed this action. They contend, however, that because Plaintiff is no longer housed at ADX Florence but is housed at USP Allenwood, this Court should sever Plaintiff's video conference claims and transfer the Motion for Injunctive Relief to the Middle District of Pennsylvania. The Court declines to do so.

As Plaintiff argues, Defendants did not object to the Recommendation concerning the video conference claims. And, there, the Magistrate Judge recommended Defendants' request to dismiss Claim Four based on improper venue be denied[4] because venue was proper. The Recommendation relied on two bases. First, because Claim Four is not narrowly limited to policies at USP Allenwood but, instead, is a broader challenge to national policies that apply throughout the prison system and, second, because Plaintiff's transfer out of Colorado does not require a change of venue. Defendants cannot now be heard to argue otherwise.

In addition, as Defendants recognize, Plaintiff was previously transferred to Terre Haute. Under Defendants' analysis, any time Plaintiff is transferred, his video conference claims would have to be transferred to another district. But, according to Defendants, whether the TRULINCS Video Service pilot program currently offered only at 15 female institutions will be *authorized* at other institutions is made *by the BOP* at the *national* level in the first instance, even if implementation is made at the local level. (ECF No. 184-1 at ¶¶ 17, 18.) While Plaintiff's Motion

[4] Defendants also asserted, alternatively and in a footnote, that transfer may be proper under 28 U.S.C. § 1406(a). (ECF No. 133, p. 9 n.3.)

for Injunctive Relief currently relates to USP Allenwood (his current location), his video conference claims have been pled while he was housed in other institutions. In other words, Plaintiff's video conference claims seek relief which controls his visits regardless of where he is housed. Moreover, as Judge Jackson aptly stated in *Ajaj v. Fed. Bureau of Prisons*, No. 15-CV-00992-RBJ-KLM, 2018 WL 3647915, at *3 (D. Colo. Aug. 1, 2018), "it would be a supreme waste of the parties' and the judiciary's time and money to dismiss the case at this point and start anew in Indiana." This holds true as to Defendants' request to sever and transfer the video conference claims and Motion for Injunctive Relief to another district: it would be a waste of time and resources to transfer because this action has been pending in this District since 2015 with significant motions practice. Accordingly, the Motion to Transfer is denied.

**B. The Motion for Injunctive Relief**

***1. Likelihood of Success on the Merits***

Plaintiff must make a strong showing that he is substantially likely to succeed on the merits of one or more of his video conference claims. As Defendants contend, Plaintiff fails to establish a relationship between his video conference claims and his injury raised in his Motion for Injunctive Relief. In fact, Plaintiff's video conference claims fail to raise the COVID-19 pandemic as any basis to support relief. In other word, while such a claim (that video conference should be provided due to COVID-19) is raised in the Motion, it is not raised in Plaintiff's complaint. In short, there is simply no claim pled under RFRA or the First Amendment in Plaintiff's operative complaint challenging the lack of access to video conference visits based on

COVID-19. It goes without saying that Plaintiff cannot prevail on an unpled claim.[5] And, without meeting this requirement, Plaintiff cannot prevail on his Motion for Injunctive Relief. *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d at 1136, 1141 (10th Cir. 2017) (recognizing that all four elements must be met with limited exception inapplicable here). Nonetheless, the Court will also address irreparable harm.

***2. Irreparable Harm***

"The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (quotation marks and citation omitted). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quotation marks and citation omitted). "[D]elay is but one factor in the irreparable harm analysis," *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009), and may serve to undercut a finding of irreparable harm.[6]

As Defendants argue, Plaintiff filed this case in 2015 and has never alleged irreparable

---

[5] Defendants also argue that Plaintiff has failed to exhaust his administrative remedies that video conference visits should be allowed due to COVID-19. Plaintiff counters that he has repeatedly exhausted his claims for video conference visits and, further, that the BOP is no longer processing appeals due to COVID-19 modified operations. As to Plaintiff's first argument, the relief sought in his request for injunctive relief is different from that which he previously asserted (and exhausted). As to Plaintiff's second argument, if appeals are no longer being processed, an issue is raised as to whether administrative remedies are "available." But the Court finds it need not reach this issue in light of its determination here.

[6] The Court recognizes the Tenth Circuit has stated that the "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd sub nom. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). But that requires a determination in the first instance that Plaintiff established his First Amendment or RFRA rights were likely to be violated, i.e., that Plaintiff made a "strong showing" of a likelihood of success on the merits of these claims. *See Wellington v. Daza*, 795 F. App'x 605, 609 (10th Cir. 2020). But the Court has found Plaintiff has not done so.

harm or moved for preliminary injunctive relief related to his video conference claims. Regardless, Plaintiff does so now based on the allegation that he or his mother may contract COVID-19 and, due to their health status, then die from this infectious disease. But, "the injury complained of [must be] of such *imminence* that there is a clear and present need for equitable relief." *Heideman*, 348 F.3d at 1189 (emphasis in original). "Speculation or unsubstantiated fear of what may happen in the future cannot provide the basis for a preliminary injunction." *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1266 (10th Cir. 2005) (quoting magistrate judge's order).

Defendants provide evidence that, at FCC Allenwood,[7] as of June 2020, there have been no confirmed cases of COVID-19 among the inmates and two staff members tested positive for COVID-19 prior to April 11, 2020. (ECF No. 184-2.)[8] Plaintiff does not dispute these numbers. Instead, Plaintiff contends that does not mean there are not asymptomatic carriers. Plaintiff asserts that it is merely fortuitous that an outbreak has not yet occurred because of the alleged lack of safety standards at USP Allenwood. Plaintiff's assertions are contested by Defendants; they are also belied by the numbers. As Plaintiff states, COVID-19 is highly contagious and can spread uncontrollably if proper protocols are not followed to protect inmates and staff from exposure. But Plaintiff provides no evidence of any uncontrolled spread, high positivity rates, or high death rates at USP Allenwood. Instead, the evidence before the Court is to the contrary. And, Plaintiff does not contend he (or his mother) is or has been sick with COVID-19 symptoms, tested positive for this disease, or has been exposed to this disease.

---

[7] FCC Allenwood consists of FCI Allenwood Low, FCI Allenwood Medium, and USP Allenwood. As stated, Plaintiff is housed at USP Allenwood.

[8] The Court also takes judicial notice that, as of November 3, 2020, at USP Allenwood, the BOP reported no deaths; three inmates and two staff are currently positive; and four inmates and one staff have recovered from COVID-19. *See Covid-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited November 3, 2020).

Similarly, Plaintiff's claims about the alleged number of deaths overall among federal prisoners (87 by June 14, 2020) and number of deaths in Pennsylvania also do not persuade the Court that Plaintiff or his mother (who is apparently in Jerusalem) will likely contract COVID-19 and die from the illness. That is not to say the Court is not cognizant of the magnitude of the COVID-19 pandemic and the serious health risks it presents. Nor does the Court doubt the sincerity of Plaintiff's concerns about contracting COVID-19 and the possible resulting health risks. Nonetheless, the Court cannot find irreparable harm based on generalized COVID-19 fears and speculation. *See Pettus v. Warden, Franklin Med. Ctr.*, No. 1:20-CV-00187, 2020 WL 2703134, at *5 (S.D. Ohio May 26, 2020).

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That Defendants' Motion to Sever and Transfer (ECF No. 185) is DENIED; and

(2) That Plaintiff's Motion for Preliminary Injunctive Relief (ECF No. 183) is DENIED.

DATED this 5th day of November, 2020.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge